UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

In re:

    COUNTY SEAT STORES, INC.

        Debtor.

Chapter 11
Case No. 99-10010(CB)
Jointly Administered

- - - - - - - - - - - - - - - - - - -x

        AFFIDAVIT OF MICHAEL GRIES PURSUANT TO
        BANKRUPTCY RULE 2014 AND LOCAL BANKRUPTCY RULE
        2014-1, ON BEHALF OF CONWAY, DEL GENIO, GRIES & CO., LLC
        <u>AS PROPOSED INVESTMENT BANKER FOR DEBTOR-IN-POSSESSION</u>

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF NEW YORK )

        Michael Gries, being duly sworn, deposes and says:

        1.    I am a Member of Conway, Del Genio, Gries & Co., LLC ("CDG"), which maintains offices at 645 Fifth Avenue, 11th Floor, New York, New York 10022. I submit this Affidavit in connection with the application (the "Application") of County Seat Stores, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor") to retain CDG, pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), as its investment banker in the above-captioned chapter 11 case, and to provide disclosures required under Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.

        2.    To the best of my knowledge and insofar as I have been able to ascertain, CDG does not hold or represent any interest adverse to the Debtor's estate.

        3.    Additionally, to the best of my knowledge and insofar as I have been able to ascertain, CDG:

(A) is not a pre-petition creditor of the Debtor;

(B) is not an equity security holder, or an "insider" of the Debtor;

(C) is not and was not an investment banker for any outstanding security of the Debtor;

(D) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;

(E) is not and was not, within two years before the date of the filing of the petition a director, officer or employee of the Debtor or of an investment banker specified in subparagraph (B) or (C) above; and

(F) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified in subparagraph (B) or (C) above, or for any other reason.

Accordingly, to the best of my knowledge, CDG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

4. Disclosure with respect to whether or not CDG has or has had "connections" with the Debtor, its creditors or other parties-in-interest, their respective attorneys and accountants, the Office of the United States Trustee or any employee of that office, insofar as I have been able to ascertain, is set forth below:

(a) CDG has not performed professional services in unrelated matters for any of the Debtor's 20 largest bondholders, the Debtor's 20 largest unsecured creditors or the Debtor's senior secured lenders. CDG has not been

2

retained to assist any of the Debtor's creditors in connection with this chapter 11 case, nor will CDG accept any engagement with respect to the Debtor or this chapter 11 case.

  (b) CDG has performed professional services in unrelated matters for other clients of Weil, Gotshal & Manges LLP ("Weil Gotshal"), the attorneys that the Debtor has retained in this chapter 11 case.

  (c) The Debtor has numerous additional creditors, equity security holders and other parties with whom it maintains significant business relationships beyond those identified in paragraphs (a) and (b). CDG may have professional relationships with such entities or persons or CDG may, from time to time, perform professional services for such entities or persons unrelated to the Debtor or its business affairs. However, CDG will not provide professional services to such entities or persons in the future on matters related to the Debtor's chapter 11 case.

  (d) Prior to the filing of this case and since November 4, 1998, CDG performed services for the Debtor in connection with the Debtor's preparation for a restructuring and a potential financing that the Debtor was seeking prior to the filing of this case (the "Initial Retention"). At the time of the filing of the Debtor's case, CDG had been paid in full for its services and CDG is not a pre-petition creditor of the Debtor.

(e) To the best of my knowledge and belief, all past associations where the Debtor's creditors or other parties-in-interest were involved are disclosed in this paragraph 4.

5. CDG has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this chapter 11 case. If CDG's proposed retention by the Debtor is approved by this Court, CDG will not accept any engagement or perform any service for any entity or person other than the Debtor in connection with this chapter 11 case. CDG will, however, consider itself free to continue to provide professional services to entities or persons that may also be creditors or equity security holders of the Debtor or parties-in-interest in this chapter 11 case, provided that such services do not relate to, or have any connection with, this chapter 11 case or the Debtor.

6. None of the "connections" listed above, in my view, gives rise to an adverse interest or affects CDG's disinterestedness nor is likely to do so in the future.

7. The Debtor has requested that CDG provide investment banking services to the Debtor during the pendency of this chapter 11 case, including, among other things:

> (a) to advise the Company with respect to other strategic alternatives, including, but not limited to, potential mergers, the sale of certain assets or the sale of the entire company;
>
> (b) to assist with the determination of the enterprise value of the Company and its optimal capital structure;

4

        (c) to identify and contact potential exit financing sources;

        (d) to assist the Company with obtaining exit financing;

        (e) to attend meetings and lead negotiations with potential investors, banks and other secured lenders, the creditor's committee appointed in the Chapter 11 case, the US Trustee, other parties in interest and professionals hired by the same, as requested;

        (f) to provide expert testimony as required;

        (g) to work with accountants and other financial advisors of the Company and any creditors committees, as requested by the Company; and

        (h) to assist with other business matters as management or counsel may request from time to time that are not duplicative of services provided by other professionals in this proceeding.

8.    On a prepetition basis, CDG was compensated at the rate of $100,000 per month, and was reimbursed for its reasonable expenses. Subject to the approval of this Court, CDG proposes to be compensated at the of $100,000 per month (and to be reimbursed for reasonable expenses) while performing the service described above in 7. The proposed compensation is subject, of course, to Court approval on fee applications under sections 330 and, if applicable, 331 of the Bankruptcy Code. CDG does not seek a transaction fee as additional compensation if CDG is successful in securing new financing for the Debtor as part of a **restructing** or assists the Debtor in consummating a merger or a sale of some of the Debtor's assets or the entire company. CDG's engagement is more completely set forth in the engagement letter dated as of February 10, 1999 (the "Engagement Letter" attached hereto as Exhibit "A").

9.  On a prepetition basis, CDG's efforts on behalf of the Debtor required substantial time and effort of one of CDG's principals and one of its vice-presidents, and portions of the time of other CDG personnel, and CDG expects that, at least for the next several months, a like effort will be required. Even though CDG does not propose to bill on an hourly basis, CDG personnel will nevertheless keep records of the time they work on the Debtor's affairs, so the Court, upon fee applications, can have satisfactory comfort as to the reasonableness of CDG's fees. CDG believes that it is customary for investment bankers to be compensated in this manner (although investment bankers performing similar services frequently receive transaction fees), and CDG is compensated by all of its clients in this fashion, although in a number of other engagements, it does receive a transaction fee. Especially since CDG is not seeking a transaction fee in this case, CDG believes (and states, pursuant to Local Rule 2014-1), that its proposed compensation is reasonable.

10.  CDG was paid its regular monthly payment of $100,000 on or about January 11, for services for the period of January 5 through February 4. CDG also received a retainer payment of $70,000 from the Debtor on or about January 21. In total, CDG has-been paid $399,208 in fees, retainers and expenses reimbursement. CDG is holding and accounting for any unearned portions of the January 11 monthly payment and the January 21 retainer payment subject to the further order of the Court.

**11.** CDG respectfully submits that, for the reasons set forth in this Affidavit and in the Debtor's Application accompanying this Affidavit, permitting CDG to be engaged as the Debtor's investment banker is in the best interests of the estate. There are substantial economic, as well as business, reasons for authorizing CDG to be retained. Attempting to substitute another investment banker would deprive the Debtor of CDG's familiarity with, and knowledge of, the Debtor's operations. Through such familiarity, CDG has gained substantial knowledge of the Debtor's business which will be invaluable and not readily replaceable without significant additional cost. Thus, I believe that CDG is particularly well suited to be the Debtor's investment banker in this case, and that the use of any other investment banker would subject creditors to significant additional costs that would not otherwise be incurred.

**12.** Should this Court approve the retention of CDG as investment banker, CDG will continue, without interruption, to perform the services described in this Affidavit and the Debtor's Application accompanying this Affidavit. Consistent with our normal practice, we will review all work activities in advance with management of the Debtor, and brief the Debtor on our ongoing efforts.

13. Subject to any further orders of the Court, CDG will provide a monthly invoice covering services rendered and expenses incurred during the preceding month. CDG understands that, in accordance with the Bankruptcy Code (and again subject to any further orders of the Court), final payment and all

interim payments are subject to approval by this Court and the filing of applications for fees and disbursements containing, among other things, a list of professionals performing services, general description of services rendered, a reasonably detailed breakdown of the disbursements incurred, and an explanation of billing practices. Though our personnel do not have individual billing rates, each professional person working on the engagement will, as previously noted, nevertheless keep a record of the time he or she has worked on the matter, so the Court can have sufficient comfort that our compensation is reasonable.

14. No promises have been received by CDG, nor any member of the firm or employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code. Neither CDG, any member of the firm, employee, nor I have any agreement with any other entity to share with such entity any compensation received by CDG in connection with this chapter 11 case or in connection with CDG's pre-chapter 11 representation of the Debtor.

15. Neither I, any member of the firm, my company, nor employee thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor's estate. Similarly, to the best of my knowledge, CDG is a "disinterested person" as that term is defined in sections 101(14) and 327(a) (as limited by section 1107(b)) of the Bankruptcy Code.

16. By reason of the foregoing, I believe that CDG is eligible for employment and retention by the Debtor pursuant to

sections 327 and 328 of the Bankruptcy Code and applicable Bankruptcy Rules.

*Michael F. Gries*
Michael F. Gries
Member

Sworn to before me this
19th day of February, 1999

*Clare Nelson*
Notary Public

232465

CLARE NELSON
Notary Public, State of New York
No. [illegible]
Qualified in [illegible] County
Certificate Filed in New York Co.
Commission expires 2/28/2000